Case number 20-4182, Gene Phillips et al. v. Acacia on the Green Condo Association et al. Argument not to exceed 15 minutes per side. Mr. Leibarker, you may proceed for the appellant. Good morning, your honors. My name is Leonard Leibarker. I have the honor of representing two handicapped condominium unit owners, Gene Phillips and the late Steve Weiss, who were adjoining apartment owners on the first floor of one of the two buildings that comprise the Acacia on the Green Condominium property in Lenhurst, Ohio. This appeal concerns the meeting and application of one portion of the 1988 Fair Housing Amendments Act, namely section 3604 F3B, which defines discrimination in part as, and I quote, a refusal to make reasonable accommodations in rules when such accommodations may be necessary to afford such person equal opportunity to enjoy their dwelling. Here our questions are, did the Acacia board have a valid rule that prohibited cooking on patios? And if they did, was there a way the rule could have been modified or applied so as to prevent Weiss and Phillips from being discriminated against? Do you agree it has to be a reasonable request, that the accommodation has to be reasonable? The statute says, your honors, that the requesters believe it may be necessary. Those three words are used in the statute. So may be necessary, but here, for example, isn't the testimony that there's, it seemed to me, pretty good evidence that this would be too costly in light of the insurance, the fire code, and everything else for them to do. That was not really an issue, your honor, because once each of the two parties made a request, the one party, Jean Phillips, is a woman who has very, very severe arthritis. Didn't they make an accommodation for her? I thought they said they'd carry it. A year and a half after they denied her request, they came forward with an alternative that they realized that had been made by her doctor as one of two alternate ways. Bring a grocery cart with an employee to help her take her picnic items down to the pavilion 600 feet away and bring it back for her. The problem is that didn't accommodate her suffering of pain in walking to and from that pavilion. What if someone couldn't walk to the pool? Would they have to put a pool right next to them? I mean, what's the line? Where does it go? In that case, they can offer, perhaps, to have an electric wheelchair or electric cart that people are using. I was curious, did neither of your clients have mobility aids? Did neither of my clients have what, your honor? Mobility aids. So, you know, canes, a wheelchair. Ms. Weiss used both a cane outside of the building, everywhere, absolutely everywhere. In her own apartment, she had to use a walker. Mr. Weiss did not use either device, however, he was suffering from therapy for lymphoma. He had what he called chemo brain and he also later obtained a cumulative vascular immune deficiency, CVID. Did his all start three years after he started requesting this? He started, yes. His diseases occurred in 2016, three years after he had been asking for the right to have a grill on his patio. Now, keep in mind that originally the only reason the board gave to both of these persons for refusing their request for accommodation was that they had this rule that prohibited cooking on patios and balconies. There was no argument about it. That was the reason that we're going to stick with that and they did. They only talked about necessity or reasonableness in connection with a motion for summary judgment. But the facts all along were a flat denial period with no reasons, no discussion, no attempt at dialogue. Why were they supposed to talk about necessity? I'm not sure I understand. Normally across the board rule is fair. Everyone lives under the same rule. So tell me what I'm not getting your point about. Well, number one, both of them contested the validity of the rule. They said there wasn't really no such rule and there shouldn't have been and if there was it was unlawful. Why? Because, number one, the Declaration of Condo Ownership provided that they have unit owners with patios had grills and they were required to maintain those grills and replace them at their own expense. That's in their declaration. Number two, the Statute of Ohio on condominium ownership 5311.05. Why isn't this a breach of contract? Isn't that a different case? Here, because the condominium law in Ohio says any restrictions, and this was a restriction on the use of their property, had to be stated in the declaration. It wasn't. The declaration itself said, if there's any restrictions on the use of condo property. This is pretty classic condo stuff. I mean, I don't think that was this case. Listen, go for it. It's your time. Well, no, but I'm simply saying, should federal courts totally ignore state law when it governs the nature of the housing? Well, yes, they should if it's not the way the case was presented below. All right, Your Honor. I accept that. What part of Judge Burke's opinion? Okay, that's the opinion. Yes, right. What part of Judge Burke's opinion makes an error in terms of not appreciating Ohio law? Is there a place where she was supposed to respond to your claim and refer to Ohio law? Well, certainly in rejecting the fact that there was a genuine dispute of material fact about the rule. There was a real dispute about the existence of the rule, number one. That was ignored. But let me... I'm sorry, why does that matter? I thought this was a housing accommodations case. It is, Your Honor. It is, but I'm simply saying that... So it wouldn't even... The board is relying, they're stating and relying as their reason. Clearly something that violates Ohio law. I mean... You can sue in Ohio. Pardon? You can sue in Ohio. Why is that an accommodation case then? I'm sorry. Isn't the accommodation case based on the allegations that they had a rule and they refused to make a needed accommodation... To the rule. To the rule. Yes. Yes, Your Honor. That's right. And I will argue that. All right? Now... But you're saying the rule supported you. No, I'm saying the rule totally did not support us. But what could have been... The rule could have been applied so that they wouldn't have to revoke the rule. They could have applied it by making an exception to the rule for two people. Or they could have, as they eventually did... The rule did not support you in your... Now I'm back to where Judge White just was. The rule did not support you. So you're saying all that did not support you and what you need is an accommodation. Right, right. But even... Assuming the rule is valid. Okay? Assuming it's valid. They could have applied it as they offered finally for Phillips to still have the rule but accommodate her in this other way. Can I ask you a question about accommodations? Yes. Let's start with getting to the parking lot and then we'll shift to getting to the outdoor grill. So let's say somebody is having mobility issues and the walker, the cane no longer work. They can still drive. They want to be able to drive. The parking lot is where the parking lot is. Let's say 300 feet away or something. Probably varies. It's a big kind of condo complex. Does the condominium complex have an obligation to get wheelchairs for the individuals with mobility problems? No. Or is it up to the individual? No. Absolutely not. Okay. So if that's true for getting to the car, why isn't it on the individuals to get a wheelchair to get to the grill? That's fine. Perhaps that would have been a very good accommodation. Then how is it a necessity? Pardon? I don't understand the necessity point then because that just blows the whole case up. No. You can't get to the grill, get a wheelchair. Right. That applies even no matter how exhausted you are. Absolutely. Absolutely. But that was not even considered as an option as an accommodation. It could have been. You said it didn't have to be an accommodation. No, no, no. I don't mean that at all, your honors. Okay. So you think the condo complex has to get everybody a wheelchair? Absolutely not. No. No. All right. But they have to at least take some time to consider whether suggesting that if you get a wheelchair to help you get down to the pool or down to the pavilion, we'll get an employee with a shopping cart to bring your goods down, to bring the picnic items to the grill. Right. And they did agree to that. They agreed to get the shopping cart a year and a half after they denied. Okay. So what does the year and a half have to do with it? Is that part of the damages? Because I believe the case law rules that at the point of violation, you cannot later, especially a long time later, try to soften your violation. They had wheelchairs. They had wheelchairs. I thought they didn't have wheelchairs. I thought you said they had a walker and cane. No, right, right. But I mean, I'm not saying they weren't prepared to use wheelchairs. It was never discussed. It was never... Did they say that? Did they say if you get us a shopping cart and have someone push it, we'll use our wheelchair? No.  Because Ms. Phillips... It was an interactive process. ...denied the process because they expected her to continue walking down to the pavilion the way she walked to the pool in the summer months. A shopping cart. Couldn't she have gotten a wheelchair? She could have. She could have. Yes. But... I got an idea. But that requires a little dialogue. Mr. Libro, I've got an idea. You're going to get your full three minutes of rebuttal. Let's hear the other side. Maybe that'll focus the issues a little bit, and we'll give you plenty of time in rebuttal. Thank you, Your Honors. Thank you. Your Honors. Good morning. May it please the Court? Good morning. My name is Holly Marie Wilson. I'm here today on behalf of the appellees, Acacia on the Green Condominium Association, and the individually named past and present board members. Personal patio grills are not necessary or reasonable under the Fair Housing Act. That's the simple issue before this Court, and that was before the District Court. There was discussion a moment ago about Ohio law, condominium law, and whether or not Acacia on the Green has an enforceable no patio grilling rule. That issue was actually litigated. It was litigated where it belonged in the State Court. It was denied in the State Court. It was denied on appeal, leaving the only issue for this Court as the only issue before the District Court, the Fair Housing Act. Why is it unreasonable to have personal patio grills at Acacia on the Green? We have an answer for that in the record, and that is that we have a 273-unit residential condominium complex, lots of people living in a very small space. There are serious concerns about residents cooking with open flame that close to these residential homes. We have deposition testimony from Acacia's insurance broker stating in no uncertain terms Acacia's insurance is based upon the premise that there is no patio grilling. Should that rule be excused for two, the two plaintiffs in this case? How tall are these buildings? I'm trying to figure out. I understand the number of units, but how many of them are ground floor? I don't have an answer to that, Your Honor. I believe that you have two very tall towers is what makes up this complex, and I don't know how many floors. In reality, there are probably very few units that are actually on the ground. That is absolutely correct. And even fewer units that have a patio large enough to arguably accommodate a grill based on the city and Ohio State fire codes. So then what you're really talking about is, and both of these people are on the ground floor, right? They are. So you're really not talking about 272 barbecues, you're talking about maybe 10? We are talking about a handful of grills, but we're still talking about the 273, actually in this case I think it's 375 people who live in that building. Should there be a fire event, they're all at risk. So whether you have one grill or 50 grills, you still have an insurance policy that's premised on the no cooking rule. And if Acacia were to permit even two grills, Acacia loses its current insurance and it would be vastly more expensive if they can even obtain it. That all goes to the reasonableness prong of the Fair Housing Act claim here. We also have arguments that it is not necessary for plaintiffs to have personal patio grills. Mr. Weiss does not use, did not use a mobility aid. No cane, no walker, no wheelchair. For the majority of the time, he is perfectly capable of walking to the grilling pavilion. I believe the testimony in the record was he did it 10 or 12 times in 2019. Out of curiosity, you know he does get, his health worsens. Were there sidewalks that you could use a wheelchair on between apartments and the grill and the pool? 100%. In fact, the grilling pavilion, which is the common area, which is removed from the residential portion of the complex and where all residents are permitted to use grills, is fully ADA compliant. So there is no reason why these two individuals in a scooter and a wheelchair could not have gotten those signs. Are there other people in the building that have scooters and wheelchairs? Yes. The complex has a significant elderly population. Mr. Weiss's requested accommodation was unreasonable because he only needed it for very small portions of the time. His own testimony is he's capable of walking and it's only on occasional instances where he suffers from extreme and debilitating... Can I go back to that last point? I'm sorry. Of course. You said others used wheelchairs to get down there? To get to the grilling area? There are residents at Acacia who rely on both scooters and wheelchairs, yes. And is that in the record? I believe that would be in the deposition testimony of Amy Wachs. I'm sorry. Amy Wachs, she is a defendant in this case, W-A-C-H. I believe it was in her testimony where she was discussing that various individuals at Acacia do rely on mobility devices. Thank you. Ms. Phillips' request was for an accommodation. She presented a letter from her doctor. The doctor does not say that Ms. Phillips cannot walk from her unit to the grilling pavilion. Instead, it says she requires a mobility aid when walking long distances. And in order to accommodate her need for this mobility aid and carrying grilling supplies, it would behoove her to have assistance in getting her supplies from her unit to the grilling pavilion. That is exactly what was provided. So why did it take a year and a half to sort out this partial accommodation? Is that accurate? It took a year and a half? It did take a year and a half, but the doctor's letter was not presented for a year and four months. I see. So from your perspective, it's two months. Yes. The board received the letter. The board held a meeting, considered the letter, and it offered an accommodation consistent with the physician's recommendations. That was the first time that Ms. Phillips presented any documentation supporting her request for an accommodation. Were there any accommodations for Mr. Weiss? There were not. There were no alternatives other than Mr. Weiss wants a grill, a personal patio grill. His request began in 2013, and those requests were supported by a myriad of... Just to be clear, so Mr. Weiss was not offered the option of, we'll take the stuff out there. Why is that? Because the nature of his disability was such that he was so disabled during these periods where he could only manage... Oh, I see. So he's saying, when I'm having those bouts, this wouldn't do me any good because I couldn't get out there anyway. I got it. All right. And in fact, it's... And just to clarify, from 2013 to 2016, he was not disabled, but he was still requesting the grill on the patio. That is correct. And he did not request a grill on his patio pursuant to the FHA until 2018, even though the disability commenced in 2016. So from 2013 to 2018, the board is consistent, regardless of what justifications Mr. Weiss set forward. And there were a multitude, dealing with everything from dropping food to challenges to the board's ability to prohibit individuals from grilling on their patios to legal challenges under the Ohio Condominium Act. They were all consistently denied for the exact same reason. Cooking with open flames is against the no grilling rule at Acacia. The no grilling rule is in place because it's a fire hazard to have open flame cooking in a residential setting. Moreover, there's also the nuisance concerns, smoke billowing up into neighboring apartments and droppings and food accumulating in the grilling area, which would attract vermin. So apart from the insurance issue, is it a valid defense to say we have a blanket rule that makes sense and we don't want to make exceptions to the rule because if everybody did it, there would be a fire hazard and smoke all over the place and it would be unpleasant. Is that a valid defense? It is, and I think it goes to the fact that the board is charged with the health and safety of every resident at Acacia. So their rule making and their decision making has to focus on that big picture, not individual needs of individual residents. There always has to be a balancing act, and that's what we see in the FHA case law. So you're saying under the case law, that would be a significant administrative burden such that they don't have to do it? I'm just putting it in the language of the case law. Yes, absolutely. There was no error below. We ask that the decision be affirmed. If there are no further questions, I'm happy to concede the remaining of my time. Thank you, Ms. Wilson. We appreciate it. Mr. Lyburger, you've got your rebuttal. There are approximately 12 to 14 first floor units that have large concrete patios that could accommodate personal grills. How many? I'm sorry. Number two, pardon? How many? I said 12 to 14 from the best of my memory. Did the judge address the reasonableness issue? No, because the judge felt that there was only one issue, and that was that neither plaintiff had proven the fact that they were necessary. Their accommodations that they requested were necessary. But they did move for summary judgment on that, right? And they attached, among other things, the insurance. Yes, the board did move for summary judgment on reasonableness and necessary. The court found, in effect, that they really didn't really argue that it was unreasonable requests that were made. And so she based her ruling solely on they were not shown to be proven as absolutely necessary for their enjoyment. Did you refute the insurance? Absolutely. The insurance was not an issue, really, because the declaration requires the association to be adequately insured. And this was when they became a condominium in 1980, when there were gas grills being used. Can I just go back to judge? Yes. I have a question. Because I missed it, if you did, and I'd like you to point me to it. Did you put evidence in the record that the premiums would not go up significantly? The only evidence was that the association was already paying insurance from 1980 on because they had grills. No, I understand that. No, the amounts of premiums changed. No, I don't believe there's any evidence. Either way, really. I thought the insurer's letter said they would either increase the premiums significantly or lose coverage. He said that, but the fact of the matter is the existing policy requirements of the declaration already had to cover such a possible use of the property because it was required. And they were using grills in 1980, which they finally admitted. At first, they argued to the lower court that grills were not used, and they had this rule since 1980. You can't use it this way. That's not the fact. They eventually admitted in a 2016 letter to Mr. Weiss that there had been grills used in 1980 on the first floor units, and that's the reason why there was no rule back then because they knew the declaration allowed it and required it, required it to be maintained. Now, the discussion about Ms. Silliff's letter, doctor's letter, he suggested either two accommodations. One, simply don't revoke the no cooking rule, but adjust it and allow it to be applied in her instance as an exception. Or he was the doctor that came up with the idea of a cooking cart, an employee helping her take her cooking items out to the outdoor grills to use there and help bring those items back if necessary. There was no willingness to discuss the practicality of that option whatsoever in terms of the both entrances and exits to the garage and other issues about that. That unwillingness to discuss at any time, this board's unwillingness to discuss possible options, alternatives, I think is an important fact that was not in dispute. And number two, the reason why the offer was not made to Mr. Weiss, in my opinion, because of the evidence of his long efforts to try to get permission to use a grill in which the board consistently, all the time, every year opposed simply because of the no cooking rule. They wouldn't discuss it with him, they wouldn't discuss it with two lawyers that he hired from Columbus, Ohio, that pointed out all of these points. They wouldn't discuss it. They had their lawyers send a letter. Mr. Lyberger, the red light's been on for quite a while. Yes. Thank you, your honors. Thank you. Thanks to both of you for your briefs and arguments, we really appreciate it. The case will be submitted.